1

**ALMEIDA LAW GROUP LLC**
John R. Parker, Jr. (SBN 257761)
jrparker@almeidalawgroup.com
3550 Watt Avenue, Suite 140
Sacramento, CA 95821
Tel: (916) 616-2936

2

3

4

5

[additional counsel listed below]

6

*Attorneys for Plaintiff and the Proposed Class*

7

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9

Case No. _____

10

MALIA OBILLO individually and on behalf
of herself and all others similarly situated,

**CLASS ACTION**

11

Plaintiff,

**Complaint for:**
  (1) **Violation of CLRA;**

12

v.

  (2) **Violation of UCL;**
  (3) **Violation of FAL;**

13

I-HEALTH, INC., and DSM
NUTRITIONAL PRODUCTS, INC.,

  (4) **Breach of California Express and Implied Warranty;**

14

Defendants.

  (5) **Breach of Contract;**
  (6) **Intentional and Negligent Misrepresentation; and**

15

16

  (7) **Unjust Enrichment.**

17

**JURY TRIAL DEMANDED**

18

19

        Plaintiff Malia Obillo, a California citizen, on behalf of herself and all others similarly situated,

20

alleges violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750,

21

*et seq*.; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§ 17200, *et seq*.;

22

California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500, *et seq*.; for breach of

23

California's express and implied warranty; breach of contract; intentional and negligent

24

misrepresentation; and unjust enrichment against Defendants i-Health, Inc., and DSM Nutritional

25

Products, Inc. (collectively "i-Health" or "Defendants"). This Court has jurisdiction pursuant to 28

26

U.S.C. § 1332. In support of these claims, Ms. Obillo states as follows:

27

28

## NATURE OF THE ACTION

1.     Defendant i-Health, one of the largest distributors of pre- and pro-biotic products in the United States, routinely misleads consumers and violates the law by inaccurately labeling and advertising its product, Culturelle IBS Complete Support (the "Product"), as "clinically shown" to reduce pain, bloating and other IBS symptoms. However, i-Health cannot support this claim because it did not conduct a clinical trial that met minimum scientific standards and Ms. Obillo, through the use of the Product, has been personally subjected to Defendant's deceptive claims and misrepresentations.

2.     Sufferers of IBS symptoms rely on i-Health's deceptive claims and misrepresentations on the Product's label when purchasing the Product. They pay premium prices because they believe that the Product was "clinically shown" to relieve their symptoms, when those packaging claims do not actually have "clinical" support.

3.     Ms. Obillo brings this action on behalf of herself and others similarly situated to rectify these unlawful practices and compensate consumers for the losses they incurred in relying on i-Health's deceptive and misleading Product labels.

## THE PARTIES

4.     Plaintiff Malia Obillo is a natural person and citizen of California who at all times relevant to the facts and transactions referenced in this Complaint resided in the City of Oakland in the Northern District of California. Ms. Obillo purchased the Product, manufactured and distributed by Defendants, during the four (4) years prior to the filing of this Complaint ("the Class Period") for personal, family or household purposes. Ms. Obillo was injured in fact and lost money as a result of Defendants' unlawful labeling.

5.     Defendant i-Health, Inc., is a wholly owned subsidiary of Defendant DSM Nutritional Product, Inc., and a corporation incorporated under the laws of Delaware, with its principal place of business in Connecticut. Upon information and belief, i-Health's principal place of business is 55

Sebethe Drive, Suite 102, Cromwell, Connecticut 06416, and its address for service of process is Goodwin Square, 225 Asylum Street, 20th Floor, Hartford, Connecticut 06103.

6.      Defendant DSM Nutritional Product, Inc. ("DSM"), is a corporation incorporated under the laws of Delaware with its principal place of business in New Jersey. Upon information and belief, DSM's principal place of business is 45 Waterview Boulevard, Parsippany, New Jersey 07054, and its address for service of process is Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

7.      Defendants are liable for the acts of their employees, agents, representatives, coconspirators, affiliates, and related entities under the theories of respondeat superior, agency, conspiracy, joint venture, joint enterprise, as parents-subsidiaries, or under corporate veil piercing.

8.      Accordingly, Defendants are equally, co-extensively, and jointly and severally liable for each and every act of their employees, agents, representatives, co-conspirators and related entities.

9.      Where reference is made herein to Defendants and their employees, agents, representatives, co-conspirators or related entities, Plaintiff intends that any such act, conduct or reference is attributable to Defendants through these theories of vicarious liability.

10.      At all times relevant, Defendant i-Health acted on behalf of, and as an agent for, Defendant DSM. At all times relevant Defendant DSM had the right to control its agent, i-Health.

**JURISDICTION AND VENUE**

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a putative class action wherein, upon information and belief, the aggregate amount in controversy exceeds $5,000,000; there are over 100 class members; and minimal diversity requirements are met. *See* 28 U.S.C. § 1332(d)(2).

12.      Venue is proper in the District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Obillo's claims occurred in this judicial district. Ms. Obillo purchased the Product at issue and was misled by i-

Health's inaccurate labelling in this District.

## FACTUAL ALLEGATIONS

13.    IBS, or irritable bowel syndrome, is a common, chronic condition that affects the stomach and intestines. Some individuals are more severely affected by IBS symptoms than others, and a person's symptoms may worsen during periods of stress or after eating certain foods.

14.    The exact cause of IBS symptoms is unknown.

15.    There is not a specific test to diagnose IBS.

16.    IBS symptoms can have a significant impact on a person's daily life and include abdominal pain, cramping, bloating, gas, diarrhea, constipation, indigestion, heartburn, nausea, and vomiting. As there is no cure for IBS, treatment is focused on lessening the severity of the symptoms.

### i-Health's Label for Culturelle IBS Complete Support is Misleading

17.    i-Health is one of the largest distributors of pre- and pro-biotic products in the United States.

18.    At all times relevant hereto, i-Health designed, manufactured, produced, promoted, marketed and/or sold the Product.

19.    The following are true and correct images of the Product:









20.    As seem above, the Products labelling claims that the Product:

a.    Provides "IBS Complete Support";

b.    Is "Clinically shown to relieve▼ Abdominal Pain • Bloating • Constipation • Diarrhea Due to IBS";

c.    Provides "More Symptom Free Days▼";

d.    Was "Shown in a clinical study▼ to improve IBS symptoms within 4 weeks";

e.    Has effects that support the representation that "Living with IBS is difficult, taking Culturelle® IBS complete support to help manage symptoms is easy";

f.    "Helps Normalize Bowel Movements";

g.    Is "For dietary management of irritable bowel syndrome (IBS)";

h.    "[I]s clinically shown▼ to help relieve the intensity & reduce the frequency of severe digestive symptoms associated with all types of IBS which can take a toll on your mind and body";

i.   Is "Formulated with a proprietary blend of HMO bioactive prebiotics that are clinically shown▼ to help restore your digestive balance"; and

j.   "[H]elp[] to relieve your IBS symptoms."

21.   The ▼ symbols indicate that according to the Product label, the representation was "Shown in an open label clinical study including 317 IBS participants."

22.   There were similar representations on the Culturelle.com website.

23.   The label implies that people who use the Product will be cured of all the listed symptoms for periods of time, overstating the Product's benefits in reliance on the clinical study referenced on the label.

24.   Despite these claims, primary clinical or scientific evidence did not and does not exist to support claims that the consumer will benefit from using the Product.

**National Advertising Division Recommends i-Health Discontinue "Clinically Shown" Claims**

25.   The National Advertising Division (NAD), an independent self-regulatory organization, monitors and evaluates national advertising in all media for truth and accuracy, as well as provides dispute resolution services to the advertising industry involving advertisers' claims.

26.   The Procter & Gamble Company (P&G), a competing manufacturer of probiotics and prebiotics, challenged i-Health's claims on the Product's label.[1]

27.   In resolving a claim that claims made by an advertiser lack sufficient substantiation, NAD makes one of three determinations. Either the evidence 1) fully substantiates the claim under review; 2) is insufficient to support the claim, but the claim may be modified in current and future advertising to better reflect the evidence; or 3) is wholly insufficient to support the claim, such that NAD recommends discontinuing the claims.

28.   NAD's findings are detailed in its final decision, attached as Exhibit A.

---

[1] *See* Press Release, BBB National Programs, *National Advertising Division Recommends i-Health Discontinue Health-Related Claims for Culturelle IBS Complete Support*, (May 31, 2022) https://bbbprograms.org/media-center/dd/ihealth-culturelle-ibs-complete-support.

29.    As shown above, the Product's packaging states, in several ways, that the Product has been "clinically shown" to provide benefits to IBS sufferers.

30.    NAD refers to such claims as "establishment" claims because they promise the consumer that scientific evidence proves or "establishes" the truth of the claims. Exhibit A at 5.

31.    In addressing P&G's complaint, NAD found that i-Health's studies were not sufficiently reliable substantiation and recommended that it discontinue its claims that the Product was "clinically shown" to improve symptoms of IBS. *Id.*.

32.    NAD defines "clinical" to mean that a study has "controlled, consistent, and reproducible conditions." *Id.*

33.    NAD identified methodological flaws in i-Health's study, such as failure to use a placebo control and lack of blinding; and found that studies regarding the Product's mechanism of action were inadequate evidence to support product efficacy claims. *Id.* at 8-9.

34.    NAD determined that because i-Health's study lacked blinding and controls, the Product has not been "clinically shown" to provide the claimed benefits. *Id.* at 5.

35.    NAD determined that the claims on the Product's packaging convey the message that the Product provides specific benefits related to IBS symptom relief and management and that the Product can even treat or cure the underlying conditions by going beyond symptom relief. *Id.* at 10.

36.    NAD also recommended that i-Health discontinue the claim "IBS Complete Support" in the Product name, finding that "'IBS Complete Support' conveys the message that the Product provides broad support for consumers suffering from IBS, a message which is not supported by the evidence." *Id.* at 11.

37.    These misleading representations are directed at people who at the very least suffer from the digestive symptoms listed on the Product label and who are relying on the Product to help them with the symptoms, which can be very painful.

**Plaintiff Malia Obillo's Facts**

38.     Ms. Obillo is a consumer who purchased the Product for her personal use, as she has experienced all the symptoms that the Product's label claims it is "clinically shown" to relieve.

39.     On June 11, 2022, Ms. Obillo, relying on the representation on the Product label that it is "clinically shown to relieve" IBS symptoms, purchased the Product for $38.74, inclusive of tax, from a Target store in Emeryville, California, within the Northern District of California.

40.     At the time Ms. Obillo purchased the Product, she did not know, and had no reason to know, that Defendants' claims were misleading and unlawful as set forth herein.

41.     Ms. Obillo paid more for the Product than she would have had she known that the "clinically shown" claims on the label were unsubstantiated.

42.     i-Health provides the Product labeling materials, which are used by consumers, and the labels make false claims and misrepresentations.

43.     Defendants' labeling, advertising and marketing as alleged herein is false and misleading and was designed to increase sales of the Product at issue.

44.     Manufacturers, like i-Health, are aware that consumers who suffer from the symptoms listed on the Product label, like Ms. Obillo, are more likely to buy products that are marketed as being supported by a clinical study.

45.     i-Health labels its Product as supported by clinical science because the connotation of that representation is that the Product is superior and more valuable.

46.     As a result of i-Health's unlawful and misleading claims, Ms. Obillo and thousands of similarly situated consumers purchased the Product at issue.

47.     Consumers like Ms. Obillo are deceived by i-Health's misrepresentations and are harmed by overpaying for a material feature or benefit advertised on the product labels that they do not receive.

48.     i-Health's misrepresentations are part of an extensive labeling, advertising and

marketing campaign, and a reasonable person would attach importance to i-Health's misrepresentations in determining whether to purchase the Product at issue.

49.     i-Health capitalized on misleading and deceiving purchasers of its Product to get an unfair business advantage when competing with its marketplace peers.

50.     These false representations have been made for a period of time up to and including at least June 2022.

**CLASS ACTION ALLEGATIONS**

51.     Ms. Obillo brings this action on behalf of the following class of persons (the "Class"), subject to modification after discovery and case development:

> **All persons in the State of California who, within four years prior
> to the filing of this Complaint, purchased the Product.**

52.     Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

53.     It is administratively feasible to ascertain Class members by reference to objective criteria: California consumers who purchased the Product during specified time period. There are no subjective issues such that determining class membership would require a "mini-trial" on the merits of each Class member's claim.

54.     Ms. Obillo proposes that she serve as class representative and that her counsel serve as class counsel.

55.     Ms. Obillo is an adequate class representative because her interests do not conflict with the interests of the Class members, and she will adequately and fairly protect the interests of the Class members. Ms. Obillo intends to prosecute this action vigorously and has taken actions before filing this Complaint by hiring skilled and experienced counsel and by making a pre-suit demand on behalf of Class members to protect the interests of the Class. There is no conflict between Ms. Obillo

and the proposed Class.

56. To prosecute this case, Ms. Obillo has chosen the undersigned law firm, which has the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

57. There are questions of law and fact common to Ms. Obillo and to the Class that predominate over any questions affecting only individual Class members, including, but not limited to:

    a.    Whether Defendants engaged in unfair or deceptive business practices by advertising and selling the Product with material misrepresentations on its packaging;

    b.    Whether Defendants made unlawful and misleading claims regarding the substantiation of the claims on the Product's label;

    c.    Whether the Product was falsely advertised;

    d.    Whether Defendants violated the CLRA, UCL, FAL, breached express and/or implied warranties, breached contracts, engaged in negligent or intentional misrepresentations, or were unjustly enriched;

    e.    Whether Ms. Obillo and the Class were damaged by Defendants' conduct;

    f.    Whether Ms. Obillo and the Class are entitled to actual and/or statutory damages as a result of Defendants' actions;

    g.    Whether Ms. Obillo and the Class are entitled to restitution;

    h.    Whether Ms. Obillo and the Class are entitled to attorneys' fees and costs.

58. Proof of a common set of facts will establish the right of each Class member to recover.

59. Ms. Obillo's claims arise from the same course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

60.     Ms. Obillo's claims are typical of the claims of the Class members because Ms. Obillo, like the Class members, purchased the Product in reliance on the misleading assertions on its packaging. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.

61.     Ms. Obillo and the Class have all been harmed by Defendants' conduct in violation of California law. Ms. Obillo and the Class members sustained the same types of damages and losses.

62.     Numerosity is satisfied. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Ms. Obillo believes the number of Class members is in the thousands of persons, if not more. Individual joinder of these persons is impracticable.

63.     The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. In addition, it is likely that most Class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual Class members, even if possible, would create a risk of inconsistent or varying adjudications regarding the individual Class members.

64.     A class action is the superior method for fair and efficient adjudication of Ms. Obillo's and the Class members' claims.

65.     There are no difficulties likely to be encountered by the Court in managing this putative class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq.*

66.     Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

67.     California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken

by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Cal. Civ. Code § 1770(a).

68.    The Product is a "good," as defined in California Civil Code § 1761(a).

69.    Defendants are each a "person" as defined in California Civil Code § 1761(c).

70.    Ms. Obillo and Class members are "consumers," as defined in California Civil Code § 1761(d).

71.    Purchase of Product by Ms. Obillo and Class members are "transactions," as defined in California Civil Code § 1761(e).

72.    Defendants also violate California Civil Code § 1770(a)(5) by representing that the Product have "characteristics, … uses [or] benefits … which [they] do not have" in that Defendants advertised the Product as "clinically" proven when they were not.

73.    Similarly, Defendants violate California Civil Code § 1770(a)(7) by representing that the Product "are of a particular standard, quality, or grade … if they are of another" by advertising that the Product was "clinically" shown to remedy IBS symptoms when the Product does not actually have those qualities.

74.    Lastly, Defendants violate California Civil Code § 1770(a)(9) by advertising the Product "with intent not to sell them as advertised" due to deceptive statements and claims that the Product was "clinically" shown to reduce IBS symptoms when it was not.

75.    As discussed above, however, these claims are not supported by a clinical study because the study referenced does not meet minimum scientific standards.

76.    Defendants' assertions that the Product is "clinically" proven is an expressly stated feature that consumers often will pay more for, and the Product did not actually have that feature.

77.    Ms. Obillo relied on the Product's claims and suffered as a result.

78.    Ms. Obillo and the Class members reasonably and justifiably relied on Defendants' misrepresentations in purchasing the Product. Had the Product been honestly advertised and labeled,

Ms. Obillo and Class members would not have purchased them and/or would have paid less for them.

79.     As a proximate and direct result of Defendants' conduct, Ms. Obillo and Class members have been injured and suffered damages by purchasing one or more of the Product that feature false and/or misleading labeling.

80.     Likewise, Defendants have unreasonably profited from this conduct.

81.     Given that Defendants' conduct violated California Civil Code § 1770(a)(5), Ms. Obillo and Class members are entitled to and seek injunctive relief to put an end to Defendants' violations of the CLRA.

82.     Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the Product.

83.     Pursuant to California Civil Code § 1782(a), Ms. Obillo on her own behalf, and on behalf of Class members, notified Defendants of the alleged violations of the CLRA in a letter dated September 22, 2022. Despite giving Defendants more than 30 days from the date of the notification letter to provide appropriate relief for violations of the CLRA as to the proposed Class, Defendants failed to provide such relief.

84.     Ms. Obillo also requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).

85.     As such, Ms. Obillo also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as provided in California Civil Code § 1780 and in the Prayer for Relief.

**COUNT II**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

86.     Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

87.     California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects consumers by holding companies liable for unfair competition and unlawful business practices.

88.     The UCL provides a private right of action to any person who has suffered injury in fact and, as a result of unfair business practices, has lost money or property. Cal. Bus. & Prof. Code § 17204.

89.     The UCL broadly applies to any corporation that engages in unfair competition. *Id.* §§ 17200, 17201.

90.     The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. *Id.* § 17200.

91.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation. The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999).

92.     Because the UCL's definition of unfair competition includes any unlawful business act or practice, the statute "borrows violations of other laws and treats them as unlawful practices" that are independently actionable under the UCL. *Id.* at 539–40. Accordingly, violations of other statutes as alleged herein are all actionable under the UCL.  Specifically, Defendants' violations of sections 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA constitute as basis for Plaintiff's UCL claim under the unlawful prong.

93.     Defendants' conduct constitutes unfair and/or fraudulent business acts and practices because Defendants made false representations to Ms. Obillo and Class members that were likely to

deceive Ms. Obillo and Class members into purchasing Defendants' Product. Defendants misrepresented and made false statements that the claims on the Product's packaging were "clinically" proven when they were not.

94.     Defendants are aware that the claims or omissions they make about the Product are and continue to be false and misleading.

95.     Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling of its Product.

96.     Defendants' conduct was, and continues to be, unfair, in that the injury to countless purchasers of the Product is substantial and is not outweighed by any countervailing benefits to consumers or to competitors.

97.     There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests other than the conduct described herein.

98.     Moreover, Ms. Obillo and Class members could not have reasonably avoided such injury, given that Defendants failed to disclose the Product's true characteristics. Ms. Obillo and Class members purchased the Product in reliance on the representations made by Defendants, as alleged herein.

99.     As a result of the above conduct, Ms. Obillo has suffered economic injury, and Defendants have been unjustly enriched at the expense of Ms. Obillo and Class members through: the monies paid to Defendants for the Product that lacked the characteristics advertised, interest lost on those monies, and their unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers.

100.    As a result of the business acts and practices described above, Ms. Obillo and Class members, pursuant to section 17203 of the UCL, are entitled to an Order enjoining such future wrongful conduct on the part of Defendants and such other Orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money

paid for the Product as a result of the wrongful conduct of Defendants. Pursuant to California Civil Code § 3287(a), Ms. Obillo and Class members are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Ms. Obillo and Class members are entitled to interest in an amount according to proof.

**COUNT III**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

101.    Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

102.    California's False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, prohibits unfair, deceptive, untrue or misleading advertising.

103.    Defendants violated the FAL when they represented through false and misleading advertising and through other express representations that Product was "clinically" tested when it was not. Defendants misled consumers to believe that the Product possessed quality, characteristics, and value that it did not actually have.

104.    Defendants violated the FAL when they represented, through its false and misleading advertising, and through other express representations, that the Product would help all the symptoms mentioned on the packaging.

105.    Defendants' deceptive practices were specifically designed to induce Ms. Obillo and Class members to purchase the Product. Defendants engaged in marketing efforts to reach Ms. Obillo and Class members and were successful in persuading Ms. Obillo and Class members to purchase the falsely advertised Product. Ms. Obillo and Class members purchased the Product in reliance on Defendants' false and misleading statements.

106.    Ms. Obillo and Class members would not have purchased Defendants' Product had it not been for Defendants' misrepresentations of material facts. Ms. Obillo and Class members were denied the benefit of the bargain when they decided to purchase Defendants' Product over competitor's

product.

107.    Had Ms. Obillo and Class members been aware of the false and misleading advertising tactics, they would have paid less than what they paid for the Product, or they would not have purchased it at all.

108.    The above acts of Defendants, in disseminating misleading and deceptive representations and statements throughout California to consumers, including Ms. Obillo and Class members, were and are likely to deceive reasonable consumers, in violation of the FAL.

109.    In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of the FAL.

110.    Defendants engage in unlawful, unfair and deceptive practices in violation of the FAL to induce consumers to purchase its Product.

111.    As a direct and proximate result of Defendants' unlawful conduct in violation of the FAL, Ms. Obillo and Class members, pursuant to section 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendants and requiring Defendants to disclose the true nature of the misrepresentations.

112.    Ms. Obillo and Class members also request an Order requiring Defendants to disgorge ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

**COUNT IV**
**Breach of California Express and Implied Warranty**
**Cal. Com. Code §§ 2313, 2314**

113.    Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

114.    The Product was manufactured, identified, and sold by Defendants and expressly and impliedly warranted to Ms. Obillo and Class members as "clinically shown" to relieve the symptoms of IBS.

115.    Defendants had a duty to disclose and/or provide non-deceptive descriptions and

marketing of the Product.

116.   Defendants made promises and affirmations of fact through the sale of the Product constituting warranties when they advertised and sold the Product with the "clinically" shown claims on the packaging.

117.   Ms. Obillo and Class members relied on these promises and affirmations, and they became part of the basis of the bargain between Ms. Obillo and Class members and Defendants.

118.   Defendants, through marketing and product labels, created express and implied warranties that the Product was actually "clinically" shown to relieve IBS.

119.   Defendants are merchants with respect to the sale of the Product. Therefore, a warranty of merchantability is implied in every contract for sale of the Product to Ms. Obillo and Class members.

120.   Despite Defendants' express and implied warranties about the Product, the quality and characteristics of the Product were not as Defendants represented them to be.

121.   The Product did not conform to its affirmations of fact and promises due to Defendants' deceptive and misleading actions.

122.   Defendants breached express warranties and the implied warranty of merchantability because the Product did not conform to the promises or affirmations of fact made on the labels. *See* Cal. Com. Code §§ 2313, 2314(2)(f).

123.   Defendants knew the product attributes that potential customers like Ms. Obillo were seeking and developed its marketing and labeling to directly meet those needs and desires without adequately testing the Product behind the label. *See id.*

124.   As a direct and proximate result of Defendants' breach of warranties, Ms. Obillo and Class members were harmed in the amount of the purchase price they paid for the Product.

125.   Further, Ms. Obillo and Class members have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the

Product, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**COUNT V**
**Breach of Contract**

126.    Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

127.    Ms. Obillo and Class members entered into contracts with Defendants for purchase of Defendants' Product.

128.    The terms of the contracts provided that the Product was "clinically" shown to provide "Complete Support" for IBS, as those claims were on the Product's label.

129.    Defendants breached the contracts because the Product did not meet the terms that Ms. Obillo and Class members agreed to, and Ms. Obillo and Class members did not receive material benefits they expected to receive under the contracts.

130.    Ms. Obillo and Class members were damaged by these breaches, and those damages include the purchase price of Defendants' Product.

**COUNT VI**
**Negligent and Intentional Misrepresentation**

131.    Ms. Obillo incorporates the preceding paragraphs as if alleged herein.

132.    Defendants had a non-delegable duty to truthfully represent the Product, which they breached. Through the labels on the Product that consumers, including Ms. Obillo and Class members, purchased from retail establishments, Defendants deceptively represented that the claims on the Product packaging were "clinically" supported.

133.    These untrue statements deceived Ms. Obillo and Class members by giving them the impression that the Product was tested according to standards generally accepted by the scientific community.

134.    At all relevant times when such misrepresentations were made, Defendants knew that the representations were misleading, or acted recklessly in making the representations without regard to the truth; or had been negligent in not knowing that the Product's packaging claims were not

"clinically" supported, as that term is legally understood.

135.    Ms. Obillo and Class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce their purchase of the Product.

136.    Ms. Obillo and Class members were induced to pay more for Defendants' Product than they otherwise would have paid without the deceptive statements, suffering damages.

137.    Ms. Obillo and Class members would not have purchased the Product or paid as much if the true facts had been known.

138.    As a direct and proximate result of Defendants' misrepresentations, Ms. Obillo and Class members were harmed in the amount of the purchase price they paid for the Product.

139.    Further, Ms. Obillo and Class members have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Product and any interest that would have accrued on those monies, in an amount to be proven at trial.

**COUNT VII**
**Unjust Enrichment**

140.    Ms. Obillo incorporates the preceding paragraphs as if alleged herein and pleads the following in the alternative.

141.    In the event Ms. Obillo and Class members lack adequate remedies at law for the past, present, and future injuries Defendants have inflicted, Ms. Obillo seeks equitable relief on behalf of herself and all others similarly situated.

142.    As alleged herein, Defendants have intentionally and recklessly made misleading representations to Ms. Obillo and Class members to induce them to purchase the Product.

143.    Ms. Obillo and Class members have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Ms. Obillo and Class members therefore were induced by Defendants' misleading and deceptive representations about the

Product and paid more money to Defendants for the Product than they otherwise would or should have paid.

144.    Ms. Obillo and Class members have conferred a benefit upon Defendants and Defendants have retained monies paid to them by Ms. Obillo and Class members to their detriment because Ms. Obillo and Class members did not receive the full value of the benefit conferred upon Defendants.

145.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation without paying Ms. Obillo and Class members back for the difference of the full value of the benefits compared to the value actually received.

146.    As a direct and proximate result of Defendants' unjust enrichment, Ms. Obillo and Class members are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Obillo, on behalf of herself and others similarly situated, respectfully requests that the Court:

    a.   Certify the proposed Class;

    b.   Appoint Ms. Obillo as class representative and Ms. Obillo's counsel as class counsel;

    c.   Temporarily and permanently enjoin Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

    d.   Award damages, including compensatory and exemplary damages, to Ms. Obillo and the Class in an amount to be determined at trial;

    e.   Award statutory damages and/or penalties to Ms. Obillo and the Class;

    f.   Award punitive damages;

    g.   Award Ms. Obillo and the Class their expenses and costs of suit, including reasonable

1                        attorneys' fees to the extent provided by law;

2             h.    Award pre-and post-judgment interest to the extent provided by law; and

3             i.     Award such further relief as the Court deems just and proper.

4

5 DATED:   April 25, 2024                Respectfully submitted,

6                                       ALMEIDA LAW GROUP

7                                       By: /s/ *John R. Parker, Jr.*

8                                       John R. Parker, Jr. (SBN 257761)
jrparker@almeidalawgroup.com
3550 Watt Avenue, Suite 140
Sacramento, CA 95821
Tel: (916) 616-2936

11                                       PEIFFER WOLF CARR KANE
CONNWAY & WISE LLP

13                                       Brandon M. Wise*
Domenica M. Russo*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Illinois Bar No: 6319580
Illinois Bar No: 6345238
bwise@peifferwolf.com
drusso@peifferwolf.com

17                                       **pro hac vice* forthcoming

18                                       Attorneys for Ms. Obillo and the Proposed Class

**DECLARATION OF JOHN R. PARKER, JR.**
**PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, John R. Parker, Jr., declare as follows:

1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.  I am one of the attorneys representing Plaintiff and the putative class in this matter.

2.      Defendants I-HEALTH, INC., and DSM NUTRITIONAL PRODUCTS, INC., are doing business in the Northern District of California.

3.      Plaintiff purchased Defendants' product in this District and viewed Defendants' labels in this District.  Her claims are typical of those of the Class she seeks to represent in this action.

3.      This action was commenced in the United States District Court for the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on April 25, 2024 in Sacramento, California.

*/s/ John R. Parker, Jr.*
John R. Parker, Jr.