1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                        SAN FRANCISCO DIVISION

7

8     MALIA OBILLO,                          Case No. 24-cv-02459-PHK

9                    Plaintiff,
                                             **ORDER GRANTING MOTION TO**
10            v.                             **DISMISS WITH LEAVE TO AMEND**

11    I-HEALTH INC.,                         Re: Dkt. 27

12                    Defendant.

13

14        This is a putative class action brought by Plaintiff Malia Obillo ("Plaintiff") against

15    Defendant i-Health Inc. ("Defendant").  The Parties have consented to proceed before a Magistrate

16    Judge for all purposes, including entry of a final judgment under 28 U.S.C. § 636(c).  *See* Dkts.

17    12, 17.  Before the Court is Defendant's motion to dismiss Plaintiff's first amended complaint

18    ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Dkt. 27].  Plaintiff has filed

19    an opposition to the motion, and Defendant has filed a reply.  [Dkt. 31; Dkt. 34].  The Court heard

20    oral argument on the motion on December 4, 2024.  *See* Dkt. 36.  Having reviewed the Parties'

21    written and oral arguments and the governing law, the Court **GRANTS** the motion and

22    **DISMISSES** the Complaint **WITH LEAVE TO AMEND** for the reasons discussed herein.

23                                **BACKGROUND**

24        The following factual summary is derived from the Complaint.  Plaintiff is a California

25    citizen who purchased Defendant's Culturelle IBS Complete Support ("the Product"), on June 11,

26    2022, from a Target store in Emeryville, California.  [Dkt. 24 at ¶¶ 1, 4, 42].  Plaintiff alleges that

27    she read and relied on the Product's label, which states that the Product is "clinically shown to

28    relieve" pain, bloating, and other symptoms associated with irritable bowel syndrome ("IBS").  *Id.*

United States District Court
Northern District of California

*at* ¶¶ 1, 42.  Plaintiff alleges that she believed, based on the Product's labelling, that the Product was "clinically proven" to be "effective" in treating IBS symptoms.  *Id.* at ¶¶ 37, 42.  Plaintiff alleges that she "experienced all" of the symptoms referenced on the Product's label and that she purchased the Product to treat those symptoms.  *Id.* at ¶ 41.

Plaintiff alleges that Defendant's advertising statements on the Product's label are false and misleading because the Product has "not been 'clinically proven' to be effective" in treating IBS symptoms, and because she herself "did not experience any of the relief" the label claimed the Product would provide.  *Id.* at ¶¶ 37, 44.  The primary basis for Plaintiff's allegation of falseness is that the National Advertising Division of the Better Business Bureau published a report on May 31, 2022 (the "NAD Report"), which stated that the sole clinical study offered by Defendant to support its labelling claims was methodologically unreliable.  *Id.* at ¶¶ 24-34; *see* Dkt. 1-1.  The NAD Report concluded with the recommendation that Defendant discontinue labelling claims that the Product was "clinically shown" to improve IBS symptoms.  [Dkt. 1-1 at 7].  Plaintiff alleges that she would not have purchased the Product (or at least paid as much as she did) had she known Defendant's advertising statements on the Product's label were "unsubstantiated."  *Id.* at ¶¶ 45, 50.

On behalf of a putative class of all people in the State of California who purchased Defendant's Product within four years prior to April 25, 2025, Plaintiff alleges the following claims for relief: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*; (2) violation of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; (3) violation of the California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; (4) breach of express warranty; (5) breach of implied warranty; (6) breach of contract; (7) negligent misrepresentation; (8) intentional misrepresentation; and (9) unjust enrichment.  *Id.* at ¶¶ 55, 70-152.  Plaintiff seeks damages, injunctive relief, and unspecified equitable relief for her CLRA cause of action; restitution, disgorgement of profits, and injunctive relief for her UCL and FAL causes of action; damages for breach of express and implied warranties, breach of contract, and negligent and intentional misrepresentation causes of action; and restitution and disgorgement of profits for the unjust enrichment cause of action.

United States District Court
Northern District of California

1    Characterizing the Complaint as "facially deficient pleading," Defendant now moves to

2    dismiss all of Plaintiff's claims.  [Dkt. 27 at 8].

3                              **LEGAL STANDARD**

4    Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

5    complaint for "failure to state a claim upon which relief can be granted."  A motion to dismiss

6    under Rule 12(b)(6) tests the legal sufficiency of the causes of action asserted in a complaint.  A

7    dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or based on

8    the absence of sufficient facts alleged under a cognizable legal theory.  *Mollett v. Netflix, Inc.*, 795

9    F.3d 1062, 1065 (9th Cir. 2015) (quoting *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir.

10   2011)).

11   In reviewing the sufficiency of a complaint, the Court accepts all well-pleaded factual

12   allegations as true and construes them in the light most favorable to the plaintiff.  *Great Minds v.*

13   *Office Depot, Inc.*, 945 F.3d 1106, 1109-10 (9th Cir. 2019) (citing *Malibu Textiles, Inc. v. Label*

14   *Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)).  "To survive a motion to dismiss, a complaint

15   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

16   on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

17   U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

18   that allows the court to draw the reasonable inference that the defendant is liable for the

19   misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Plausibility requires pleading facts,

20   as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of

21   action[.]'"  *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (quoting *Twombly*, 550

22   U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative

23   level."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Where a complaint pleads facts that are merely

24   consistent with a defendant's liability, it stops short of the line between possibility and plausibility

25   of entitlement to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

26   In addition, Federal Rule of Civil Procedure 9(b) requires that causes of action grounded in

27   fraud be pled "with particularity."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir.

28   2009) (explaining that if a claim relies on an alleged "unified course of fraudulent conduct," Rule

United States District Court
Northern District of California

9(b) applies even if fraud is not a necessary element of the claim). "Because allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations and permitting a particularized basis for a defendant to respond to the particularized allegations." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021). To plead fraud with particularity, "the pleader must state the time, place, and specific content of the false representations as well as the identity of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference into the complaint, and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)).

## ANALYSIS

### I.     Request for Judicial Notice

As an initial matter, Defendant asks the Court to take judicial notice of: (1) the definition of "open label study" as set forth on the National Institute of Health website; (2) an advertising guide regarding dietary supplements published on the Federal Trade Commissioner's website; and (3) a full copy of the NAD Report. [Dkt. 27-1]. Plaintiff filed no opposition to the request for judicial notice and, at the hearing, confirmed that she does not oppose the request.

The incorporation by reference doctrine allows a court to take judicial notice of a document not attached to the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. "The defendant may offer such a document, and the district court may treat such a document as part of the complaint,

and thus may assume that its contents are true for purposes of a motion to dismiss under Rule

12(b)(6)." *Id.* Here, the Complaint explicitly refers to the NAD Report. [Dkt. 24 at ¶¶ 24-34].

An excerpted portion of the NAD Report is attached to Plaintiff's initial complaint. *See* Dkt. 1-1.

The NAD Report forms the basis of Plaintiff's claim that the Product's label is false and

misleading. Plaintiff does not dispute the authenticity of the document and does not oppose

Defendant's request for judicial notice. The Court therefore finds that judicial notice of the NAD

Report is appropriate.

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is

not subject to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." It is well-settled that websites and their contents may

be judicially noticed. *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146

(N.D. Cal. 2020) (collecting cases); *see also Masry v. Lowe's Cos., Inc.*, No. 24-cv-00750-CRB,

2024 WL 3228086, at *2 (N.D. Cal. June 28, 2024) ("Information on government agency websites

have often been treated as proper subjects for judicial notice.") (alterations omitted). Because the

documents from the National Institute of Health and Federal Trade Commission websites are

matters of public record, there are no issues of authenticity, and because Plaintiff does not oppose

and has raised no questions as to accuracy, the Court finds that judicial notice of these documents

is also appropriate.

Accordingly, Defendant's request for judicial notice is **GRANTED**.

## II.    Injunctive Relief

Plaintiff seeks monetary damages, as well as various forms of equitable and injunctive

relief. Defendant argues that Plaintiff lacks Article III standing to pursue injunctive relief

because: (1) Plaintiff fails to allege that she intends to purchase the Product again, and thus, fails

to allege any risk of future harm; and (2) Defendant no longer sells the Product at issue, and thus,

there is no possibility of actual or future harm. [Dkt. 27 at 23-24]. In her opposition brief,

Plaintiff confirmed that she has withdrawn her injunctive relief claims (without prejudice, should

the Product's sales be resumed or restarted). [Dkt. 31 at 22]. At the hearing, Plaintiff confirmed

1     this withdrawal.  Accordingly, Plaintiff's causes of action, to the extent seeking any injunctive

2     relief, are **DISMISSED WITHOUT PREJUDICE**.

3          **III.     Equitable Relief**

4          Defendant moves to dismiss Plaintiff's UCL, FAL, and unjust enrichment claims for

5     restitution and disgorgement, as well as her request for unspecified equitable relief under the

6     CLRA, arguing that Plaintiff has failed to allege that she lacks an adequate remedy at law.  [Dkt.

7     27 at 21-23].

8          The Ninth Circuit has made clear that, under "traditional principles governing equitable

9     remedies in federal court," a plaintiff in federal court must "establish that she lacks an equitable

10    remedy at law before securing equitable restitution for past harm[.]"  *Sonner v. Premier Nutrition*

11    *Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Courts within this District have understood this to mean

12    that a plaintiff "must, at a minimum, plead that she lacks adequate remedies at law if she seeks

13    equitable relief."  *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp.

14    3d 1083, 1093 (N.D. Cal. 2023) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d

15    869, 875 (N.D. Cal. 2021)).

16         Upon careful review of the Complaint, the Court concludes that Plaintiff does not allege

17    that she lacks an adequate remedy at law to be able to pursue claims for equitable relief.  With

18    regard to her CLRA cause of action, Plaintiff alleges without explanation or further pleading that

19    she "seeks compensatory, monetary, and punitive damages, in addition to equitable and injunctive

20    relief."  [Dkt. 24 at ¶ 89].  As to her UCL cause of action, Plaintiff alleges that she is entitled to

21    "judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any

22    person in interest any money paid" for Defendant's Product.  *Id.* at ¶ 104.  As to her FAL cause of

23    action, Plaintiff requests "an Order requiring Defendant to disgorge ill-gotten gains and/or award

24    full restitution of all monies wrongfully acquired by Defendant by means of such acts of false

25    advertising, plus interests and attorneys' fees."  *Id.* at ¶ 116.  Plaintiff neither explains why the

26    compensatory damages that she seeks would be an inadequate remedy, nor otherwise attempts to

27    distinguish her requests for equitable relief from her requests for damages.  *See In re Calif.*

28    *Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC,  2021 WL 1176645, at *7 (N.D. Cal.

United States District Court
Northern District of California

1    Mar. 29, 2021) ("[N]owhere in the complaint do Plaintiffs allege that the three-fold damages they

2    seek are inadequate or otherwise distinguish their request for restitution from their request for

3    damages.").

4         In opposing dismissal of her equitable relief claims, Plaintiff argues, first, that there is no

5    outright prohibition to seeking alternate forms of relief at the pleadings stage, and second, as to her

6    UCL claim specifically, that the UCL "only provides equitable remedies."  [Dkt. 31 at 21-22].

7    These arguments are unpersuasive.  First, while alternative pleading is allowed, that does not

8    relieve Plaintiff of the obligation to satisfy the minimum pleading requirements for each claim for

9    relief, including any alternative forms of relief.  To pursue equitable relief claims, Plaintiff was

10   required to plausibly allege that she lacks an adequate remedy at law.  *See Calif. Gasoline*, 2021

11   WL 1176645, at *8 (dismissing equitable relief claims for failure to allege adequate remedies at

12   law and finding argument regarding entitlement to alternative pleading to be "unavailing"); *see

13   also In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2 (N.D.

14   Cal. Oct. 13, 2020) ("[T]his is not an election of remedies issue. The question is not whether or

15   when Plaintiffs are required to choose between two available inconsistent remedies, it is whether

16   equitable remedies are available to Plaintiffs at all.  In other words, the question is whether

17   Plaintiffs have adequately pled their claims for equitable relief, and that question is not premature

18   on a motion to dismiss.").  Alternative pleading is not a substitute for inadequate pleading.  As

19   with the deficient complaints in *California Gasoline* and *MacBook*, here the Complaint fails to

20   adequately plead that equitable remedies are available at all (even assuming Plaintiff here is

21   entitled to plead alternative forms of relief).

22        To the extent Plaintiff argues that the UCL only allows for equitable relief, she still does

23   not explain why monetary damages, if awarded for her other causes of action, would not be

24   enough to remedy the injuries for which she seeks redress.  *See Johnson v. Trumpet Behavioral

25   Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022)

26   (dismissing UCL claim for failure to adequately allege a lack of an adequate remedy, where the

27   plaintiffs alleged only that they sought equitable remedies to the extent legal remedies were

28   inadequate).

United States District Court
Northern District of California

1    As to her unjust enrichment cause of action, Plaintiff alleges only that she seeks equitable

2   relief, "[i]n the event" she "lack[s] adequate remedies at law for the past, present, and future

3   injuries Defendant has inflicted." [Dkt. 24 at ¶ 147]. This conditional phrasing "is not an

4   allegation that [Plaintiff] lack[s] adequate remedies at law." *Johnson*, 2022 WL 74163, at *3.

5   Plaintiff's expressly conditional pleading here lays bare the same defect as with her other pleading

6   for equitable relief: alternative (or conditional) pleading is not a substitute for satisfying the

7   minimum pleading requirements. As with her equitable relief claims under the CLRA, UCL, and

8   FAL, Plaintiff does not allege that actually she lacks adequate remedies at law. This is a

9   fundamental legal defect in the pleading. Indeed, the conditional phrasing here inherently admits

10  (and leaves open the possibility) that she has an adequate remedy at law, which would be fatal to

11  this claim even as expressly pled. Plaintiff's pleading here does not attempt to distinguish her

12  request for unjust enrichment from her requests for damages for her other causes of action

13  (especially where all causes of action in this Complaint are based on the same common nucleus of

14  operative facts).

15    Because Plaintiff's UCL, FAL, and unjust enrichment causes of action each seek only

16  equitable relief, those causes of action are all **DISMISSED WITHOUT PREJUDICE**.

17  Plaintiff's claim for any equitable relief under the CLRA is likewise **DISMISSED WITHOUT**

18  **PREJUDICE**.

19    **IV.    CLRA Claim**

20    Plaintiff seeks damages for alleged violations of the CLRA. [Dkt. 24 at ¶¶ 70-89].

21  Defendant argues that this claim should be dismissed because it is improperly based on a theory of

22  a lack of substantiation. [Dkt. 27 at 12-16].

23    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or

24  practices undertaken by any person in a transaction intended to result or which results in the sale

25  or lease of goods or services to any consumer[.]" CAL. CIV. CODE § 1770(a). The practices

26  proscribed by the CLRA include misrepresenting the "characteristics," "uses," or "benefits" of

27  product; misrepresenting that a product is "of a particular standard, quality or grade;" and

28  advertising a product "with intent not to sell [it] as advertised." *Id.* §§ 1770(a)(5), (7), (9).

1    It is well-settled that private litigants may not bring suit under the CLRA "to demand

2    substantiation for advertising claims." *Nat'l Council Against Health Fraud, Inc. v. King Bio*

3    *Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (Cal. App. 2003) ("Private plaintiffs are not

4    authorized to demand substantiation for advertising claims."); *Kroessler v. CVS Health Corp.*, 977

5    F.3d 803, 810 (9th Cir. 2020) ("Although the FDCA requires manufacturers to have substantiation

6    for their structure/function claims, California law prohibits private plaintiffs from demanding that

7    advertisers substantiate their claims."); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir.

8    2017) (collecting cases).  The authority to challenge advertising on lack of substantiation grounds

9    is reserved to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any

10    district attorney."  CAL. BUS. & PROF. CODE § 17508; *see also King Bio*, 107 Cal. App. 4th at 1345

11    ("The Legislature has expressly permitted prosecuting authorities, but not private plaintiffs, to

12    require substantiation of advertising claims.").

13    To state a false advertising claim under the CLRA, a private litigant must "allege specific

14    facts pointing to actual falsehood" of the statements.  *Kwan*, 854 F.3d at 1096-07 ("[E]ach of these

15    is simply an allegation that defendant's marketing claims lack scientific substantiation.  Since

16    California law does not provide a private cause of action for claims that advertising lacks

17    substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal

18    flaw."); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) ("[A] private plaintiff bears

19    the burden of producing evidence to prove that the challenged statement is false or misleading.").

20    A plaintiff may establish such falsity by citing to "testing, scientific literature, or anecdotal

21    evidence."  *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1118 (N.D.

22    Cal. 2023) (quoting *King Bio*, 107 Cal. App. 4th at 1348); *see also Brockey v. Moore*, 107 Cal.

23    App. 4th 86, 99 (Cal. App. 2003) (suggesting that the experience of "very few persons" or

24    "isolated examples" may not suffice to show falsity).  Absent allegations demonstrating actual

25    falsity, "the claim collapses into a 'lack of substantiation' claim that private litigants may not

26    bring under California law."  *Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 WL

27    2756670, at *3 (N.D. Cal. July 14, 2022) (citing *Engel v. Novex Biotech LLC*, No. 14-cv-03457-

28    MEJ, 2015 WL 846777, at *4 (N.D. Cal. Feb. 25, 2015)).

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1

2     The law recognizes the conceptual dividing line between a claim that an advertisement is

3   false versus a claim that an advertisement lacks substantiation.  "Courts have been careful to

4   distinguish between allegations that a defendant's advertising [statements] are actually false and

5   allegations that such [statements] lack substantiation." *Locklin v. StriVectin Operating Co.*, No.

6   21-cv-07967-VC, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (quoting *In re Clorox*

7   *Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012)).  An advertising claim is *false* if it

8   has "actually been disproved," such that "the plaintiff can point to evidence that directly conflicts

9   with the claim." *Cooper v. Curallux LLC*, No. 20-cv-02455-PJH, 2020 WL 4732193, at *4 (N.D.

10  Cal. Aug. 14, 2020) (quoting *Kwan v. SanMedica Int'l, LLC*, No. 14-cv-03287-MEH, 2015 WL

11  848868, at *4 (N.D. Cal. Feb. 25, 2015)).  An advertising claim is *unsubstantiated* if it has "no

12  evidentiary support one way or the other." *Id.* (quoting *Eckler v. Wal-Mart Stores, Inc.*, No. 12-

13  CV-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012)); *Liou v. Organifi, LLC*,

14  491 F. Supp. 3d 740, 750 (S.D. Cal. 2020) ("[A]n advertising claim that merely lacks evidentiary

15  support is said to be unsubstantiated.").

16      Here, Plaintiff alleges that Defendant's advertising statements on the Product's label are

17  false, but the crux of the matter is *how* and *why* they are purportedly false.  Plaintiff's theory here

18  is that the underlying study relied upon for the labelling statements did not meet the minimum

19  scientific standards to qualify as a "clinical" study.  From the face of the Complaint, Plaintiff has

20  not alleged any facts that disprove that the Product is "clinically shown to relieve" IBS symptoms.

21  Rather than allege the reasons why that claim is false, Plaintiff challenges the sufficiency of the

22  methodology of the underlying study and challenges the grounds for stating that the study can

23  "clinically" show anything.

24      This is not a situation where Plaintiff has pointed to facts which show actual falsehood in

25  the Product's labelling.  For example, Plaintiff does not allege that the underlying study is

26  fictitious, was falsified, or did not happen.  Nor does Plaintiff cite evidence, such as actual testing

27  or other studies yielding contrary results, to allege that the results of the underlying study were

28  disproved or refuted.  *Cf. Debari v. Winix Global LLC*, No. 24-cv-06596-JSC, 2025 WL 56414, at

*3 (N.D. Cal. Jan. 9, 2025) ("Plaintiffs here are not making a lack of substantiation claim; they

allege the True HEPA representation is false because, based on actual testing, the filters do not meet HEPA standards."); *Graham v. Central Garden & Pet Co.*, No. 22-cv-06507-JSC, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023) ("Plaintiff plausibly alleges the statements are false or misleading and that reasonable consumers could be misled. Defendant claims the products 'reduce multi-cat conflict and destructive behavior,' provide 'anxiety and stress relief,' and 'reduce scratching' and 'urine marking.' But, according to Plaintiff, three studies found synthetic pheromones had no effect on cat behavior. As alleged, and together with Plaintiff's other factual allegations, the studies help 'nudge' an inference of falsity 'across the line from conceivable to plausible.'") (internal citations omitted). Nor does Plaintiff allege that other experts in the field have confirmed that the study's results were disproven by the scientific community. *Cf. Cooper v. Curallux LLC*, 2020 WL 4732193, at *4 (N.D. Cal. Aug. 14, 2020) ("[I]t is clear that plaintiff's allegations that defendant falsely advertises the products offer hair growth 'without side effects,' is not a substantiation claim. By alleging, '[s]cientific studies and experts in the field of hair restoration confirm there are several side effects associated with use of low level laser therapy for hair loss,' plaintiff is contending that defendant's advertising claim has been disproved by the scientific community.") (internal citation omitted).

Claiming that the study underlying the Product's label is not rigorous enough to qualify as a "clinical" study is inherently an allegation that the "clinically shown" statement is not sufficiently substantiated. Upon careful examination of the Complaint, the Court finds that Plaintiff alleges insufficient facts to establish the falsity of Defendant's labelling. Fundamentally, when read in full context, the Complaint alleges only a lack of substantiation claim. *See Perez*, 2022 WL 2756670, at *4 (dismissing false advertising claim alleging that the product at issue was "clinically tested to instantly lock in moisture" as an impermissible challenge based on a lack of substantiation); *Engel*, 2015 WL 846777, at *6 (dismissing CLRA claim alleging that the product at issue was "clinically tested" for lack of substantiation, where the plaintiff acknowledged in the complaint that testing had been performed but disputed the adequacy of that testing).

In an effort to avoid dismissal, Plaintiff argues that her cause of action alleges "an affirmative falsehood" as opposed to a "lack of substantiation"—namely, that the Product "is

backed up with scientific proof." [Dkt. 31 at 12, 14]. Plaintiff argues that her allegations plausibly show "that the method used by [Defendant] in its study was unreliable," and by extension, "that there is no evidence to support the conclusion that the product is clinically proven to be effective." *Id.* at 14. Plaintiff argues that she is entitled to challenge "affirmatively false statements that a product is backed up with scientific proof." *Id.* As support, Plaintiff cites *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358 (9th Cir. 2016); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522 (S.D. Ohio 2011); and *Cabral v. Supple, LLC*, No. ED 12-00085-MWF (OPx), 2012 WL 12895824 (C.D. Cal. July 3, 2012). *Id.* at 14-15. The Court finds these cases to be distinguishable or otherwise inapposite.

In *Bitton*, the defendant manufactured a nutritional supplement and represented it had conducted a study with "'statistically significant results' showing increases in 'free testosterone' in study participants who took" the supplement. 654 F. App'x at 362. The *Bitton* plaintiffs alleged that this statement was false and—unlike Plaintiff here—appended to their complaint an expert report that concluded the results from the underlying study were not, in fact, statistically significant. *Id.* The Ninth Circuit held that the allegations, supported by an expert report directly contradicting the study's results, were sufficient to state a claim. *Id.* Here, by contrast, Plaintiff did not submit an expert report with her Complaint, and she challenges the study's adequacy as opposed to its results.

In *Rikos*, the defendant manufactured a food supplement and stated on the product's label and in advertisements that the product's digestive health benefits were "clinically proven." 782 F. Supp. 2d at 527. There, the plaintiff alleged the statement was false, citing to the defendant's own clinical study which concluded that there were "no statistically significant differences" between the outcome of the control and non-control groups. *Id.* Further, the complaint in *Rikos* alleged the existence of other studies, including one study which found that persons receiving the active ingredient in the defendant's product did not experience any improvement in their condition. *Id.* Here, unlike in *Rikos*, Plaintiff does not allege the existence of other clinical studies (or indeed any other scientific evidence) which contradicts the *results* of the Product's underlying study.

Finally, in *Cabral*, the plaintiff alleged that the defendant's advertising claim—that the

1    product's key ingredients were "clinically proven effective" to provide "fast relief from joint

2    suffering"—was false and misleading.  2012 WL 12895824, at *2.  However, there, unlike here,

3    the plaintiff alleged that one of the underlying clinical studies at issue evaluated a chemical

4    compound that was not even found in the defendant's product.  *Id.*  Further, the plaintiff in *Cabral*

5    alleged the existence of "a series of clinical trials" showing that "the combination of these

6    ingredients [was] no more effective than placebo."  *Id.* at 1.  Again, unlike *Cabral*, Plaintiff does

7    not allege the existence of other clinical studies evaluating the Product's intended benefits.

8    　　　　To the extent that Plaintiff relies on the NAD Report to argue actual falsity of Defendant's

9    "clinically shown" statement, that argument is unavailing.  The NAD Report concluded only that

10   the underlying study was unreliable.  The NAD Report did not conclude, nor does Plaintiff

11   otherwise allege, that the underlying study's findings regarding the Product's intended benefits

12   were wrong.  *See Gaul v. Bayer Healthcare LLC*, No. 12-5110 (SRC), 2013 WL 12181778, at *1

13   (D.N.J. Feb. 11, 2013) ("[T]he Complaint alleges merely that the NAD Report criticized Bayer's

14   study as unreliable. . . . That a research study may be unreliable does not mean that its conclusions

15   are necessarily incorrect."); *see also Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL

16   4951435, at *5 (N.D. Cal. Oct. 25, 2021) (dismissing claim alleging defendant's "clinically

17   proven" statements were false because they lacked "robust scientific support" and rejecting

18   assertion that "only studies that are 'sufficiently large, randomized, controlled, double-blind' and

19   publicly available can provide [] scientific consensus").

20   　　　　Finally, to the extent that Plaintiff relies on her allegations that she "did not experience any

21   of the relief the Product claimed it would provide" to demonstrate actual falsity, she still fails to

22   state a plausible claim for relief.  *See Aloudi v. Intramedic Rsch. Grp.*, 729 F. App'x 514, 516-17

23   (9th Cir. 2017) (affirming dismissal of claim alleging falsity, where the plaintiff alleged that they

24   "personally did not lose weight after taking the product as directed").  This allegation is, at best,

25   anecdotal evidence of one person's experience.  Just because one person did not obtain relief from

26   IBS symptoms after using the Product does not mean that the "clinically shown" statement is

27   false.  The Product's label does not state a guarantee that *every* person who takes the Product will

28   experience relief from IBS symptoms.

United States District Court
Northern District of California

1   Accordingly, Defendant's motion to dismiss Plaintiff's CLRA claim is **GRANTED**

2   **WITH LEAVE TO AMEND**.

3   **V.      Breach of Contract and Warranty Claims**

4       Plaintiff alleges that Defendant breached the terms of a contract, as well as express and

5   implied warranties, by representing that the Product was "clinically shown" to relieve IBS

6   symptoms.  [Dkt. 24 at ¶¶ 117-36].  Defendant moves to dismiss these causes of action, arguing

7   that Plaintiff failed to plead pre-suit notice and failed to plausibly allege the requisite elements of

8   the claims.  [Dkt. 27 at 24-25].

9       "To avoid dismissal of a breach of contract or breach of warranty claim in California, a

10  buyer must plead that notice of the alleged breach was provided to the seller within a reasonable

11  time after discovery of the breach."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011);

12  CAL. COM. CODE § 2607 ("A buyer must, within a reasonable time after he discovers or should

13  have discovered any breach, notify the seller of breach or be barred from any remedy.").  "The

14  purpose of this rule is to 'allow the seller the opportunity to repair the defective item, reduce

15  damages, avoid defective products in the future, and negotiate settlements."  *Minkler v. Apple,*

16  *Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) (quoting *Cardinal Health 301 v. Tyco Elec. Corp.*,

17  169 Cal. App. 4th 116, 135 (Cal. App. 2008)).

18      Here, Defendant argues that Plaintiff's breach of contract and breach of warranty claims

19  fail because Plaintiff does not allege that she gave pre-suit notice of the alleged breaches.  [Dkt. 27

20  at 25].  Plaintiff does not directly respond to this argument in her opposition brief, and at the

21  hearing, Plaintiff effectively conceded that these causes of action are subject to dismissal on that

22  basis.

23      Accordingly, because Plaintiff fails to plausibly allege that she provided adequate pre-suit

24  notice or that pre-suit notice was not required, the Court **GRANTS** Defendant's motion to dismiss

25  Plaintiff's claims for breach of contract, breach of express warranty, and breach of implied

26  warranty **WITH LEAVE TO AMEND**.  *See Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 795

27  (N.D. Cal. 2024) ("Absent any representation that the statutory notice was provided or that an

28  exception to the notice requirement applies here, Castaneda's [breach of express warranty] claim

United States District Court
Northern District of California

1  fails.").

2  **VI.    Negligent and Intentional Misrepresentation**

3      The Complaint alleges a single, undifferentiated cause of action for negligent and

4  intentional misrepresentation.  [Dkt. 24 at ¶¶ 137-45].  Defendant moves to dismiss the negligent

5  misrepresentation claim as barred by the economic loss rule.  [Dkt. 27 at 25].  At the hearing,

6  Defendant argued that Plaintiff's intentional misrepresentation claim was also subject to dismissal

7  based on the economic loss rule; Plaintiff did not oppose Defendant's request to modify the basis

8  for its request for dismissal of that cause of action.

9      Under applicable California law, the economic loss rule precludes a party from recovering

10  both in contract and tort for "purely economic losses."  *Robinson Helicopter Co. v. Dana Corp.*,

11  102 P.3d 268, 272 (Cal. 2004) (The economic loss rule "requires a purchaser to recover in contract

12  for purely economic loss due to disappointed expectations, unless he can demonstrate harm above

13  and beyond a broken contractual promise.").  This means a party cannot recover pure monetary

14  damages that "resulted from a breach of contract unless [the party] can show a violation of some

15  independent duty arising in tort."  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir.

16  2021) (citing *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999)); *accord Sheen v. Wells Fargo*

17  *Bank N.A.*, 505 P.3d 625, 633 (Cal. 2022) ("Not all tort claims for monetary losses between

18  contractual parties are barred by the economic loss rule.  But such claims are barred when they

19  arise from—or are not independent of—the parties' underlying contracts.").

20      Here, Plaintiff alleges that Defendant made affirmative misrepresentations regarding the

21  Product at issue, and on that basis alternatively alleges these misrepresentations resulted from

22  either negligence or intentional conduct.

23      First, with regard to negligent misrepresentation, Plaintiff alleges economic loss

24  unaccompanied by physical injury or property damage, and thus, fails to state a claim for relief as

25  a matter of law.

26      The required elements of a negligent misrepresentation claim are: (1) the misrepresentation

27  of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3)

28  with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the

United States District Court
Northern District of California

15

misrepresentation; and (5) resulting damage.  *Apollo Cap. Fund LLC v. Roth Cap. Partners LLC*, 158 Cal. App. 4th 226, 243 (Cal. App. 2007) (citing *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (Cal. App. 2003)).  "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity."  *Id.*  However, a person who makes false statements "honestly believing that they are true," may still be liable for negligent misrepresentation if he or she has no "reasonable ground for such belief."  *Id.* (citation omitted).

"In general, there is no recovery in tort for *negligently* inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage[,] . . . unless two conditions are satisfied."  *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1224 (Cal. 2024).  First, the plaintiff must "demonstrate the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract."  *Id.* "Second, the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed."  *Id.*

Here, the Complaint does not allege the violation of any duty that is independent of the duties and rights assumed by the Parties under the alleged contract accompanying the sale of the Product.  *See Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) ("[A] negligent misrepresentation claim paralleling a contract claim that prays only for economic damages will be barred by the economic loss rule unless the plaintiff alleges both that the defendant made an affirmative misrepresentation, and that the defendant's misrepresentation exposed the plaintiff to independent personal liability.").  Nor does the Complaint allege that the alleged misrepresentation exposed Plaintiff to personal liability or damages independent from the alleged contract breach.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803, 2013 WL 4530470, at *9-11 (N.D. Cal. Aug. 26, 2013) (dismissing negligent misrepresentation claim based on alleged misrepresentations contained in advertisements which became a part of the sales contract).  The Complaint does not allege injury to a person or property that was not reasonably contemplated by the Parties when the contract was formed.  Rather, the damages claimed here are the economic losses stemming from purchase of the Product, which by definition was reasonably contemplated by the Parties to the contract for sale of the Product.

1    Plaintiff's claim for intentional misrepresentation is likewise deficiently pled in light of

2    the economic loss rule.  "California's economic loss rule has exceptions that fall into two broad

3    categories. The first category applies to products liability cases, where the California rule first

4    arose.  In the products liability context, the rule may be overcome by allegations of 'personal

5    injury or damages to other property [besides the defective product].'" *Wine Bottle Recycling, LLC*

6    *v. Niagara Sys. LLC*, No. 12-1924 SC, 2013 WL 5402072, at *3 (N.D. Cal. Sept. 26, 2013) (citing

7    *Robinson Helicopter*, 102 P.3d at 274 n.7).  As discussed above, the Complaint here has no

8    allegation of personal injury or damages to other property.

9    "California's economic loss rule has a second category of exceptions for breach of a

10    noncontractual duty.  These exceptions require the breach of a tort duty apart from the general

11    duty not to act negligently." *Id.* (citation omitted).  "California courts have found exceptions to

12    the economic loss rule in the noncontractual duty category where the conduct also (1) breaches a

13    duty imposed by some types of special or confidential relationships; (2) breaches a duty not to

14    commit certain intentional torts; or (3) was committed intending or knowing that such a breach

15    will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or

16    substantial consequential damages." *Id.* (citing *Robinson Helicopter*, 102 P.3d at 273-74) (internal

17    quotation marks omitted).  Here, the Complaint contains no allegations plausibly suggesting a

18    special or confidential relationship between the Parties; it does not allege the existence of an extra

19    contractual duty not to commit this intentional tort; and it does not allege that the

20    misrepresentation was made with the intention to, or knowing that it would, cause severe,

21    unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential

22    damages.

23    Fundamentally, Plaintiff fails to plead any misconduct independent of the Product's sale or

24    make allegations otherwise rebutting Defendant's showing that she only seeks economic losses—

25    the same economic losses stemming from the alleged breach of contract.  "When a contractual

26    breach results only in economic losses, the pecuniary injury may fall within the scope of parties'

27    precontractual expectations and their allocation of risks, and it is less likely to implicate the breach

28    of a tort duty independent of their contractual rights and obligations." *Rattagan*, 553 P.3d at 1228.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    For these reasons, the Court finds that the economic loss rule bars Plaintiff's claims for

2 negligent and intentional misrepresentation as currently pled.  Therefore, Plaintiff's causes of

3 action for negligent and intentional misrepresentation are **DISMISSED WITHOUT**

4 **PREJUDICE** as barred by the economic loss rule.

**CONCLUSION**

6    Accordingly, for all the reasons discussed herein, **IT IS ORDERED THAT:**

7    1.  Defendant's motion to dismiss [Dkt. 27] is **GRANTED**.

8    2.  The Complaint [Dkt. 24] is **DISMISSED WITHOUT PREJUDICE**, pursuant to Federal

9        Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief.

10   3.  Plaintiff is **GRANTED LEAVE** to file an amended complaint that addresses the issues

11       discussed herein by no later than **April 18, 2025**.

**IT IS SO ORDERED.**

Dated:  March 18, 2025

_____
PETER H. KANG
United States Magistrate Judge

18